Margaret Lyne MOSER et al.,
Petitioners,

v.

UNITED STATES STEEL CORPORA-
TION et al., Respondents.

No. B–9735.

Supreme Court of Texas.

June 27, 1984.

Rehearing Denied Oct. 3, 1984.

John H. Miller, Jr., Sinton, Luther E. Jones, Jr., Corpus Christi, Wm. G. Burnett, Sinton, for petitioners.

Bracewell and Patterson, Charles G. King, III and John L. Harvey, Houston, Robert D. Nogueria, Beeville, for respondents.

ON MOTION FOR REHEARING

CAMPBELL, Justice.

Our opinion of June 8, 1983, is withdrawn. The Motion for Rehearing is denied.

This is a suit to quiet title to an interest in uranium ore. We must determine whether uranium is included in a reservation or conveyance of "oil, gas and other minerals." The trial court awarded title to the defendant mineral owners, and the court of appeals affirmed the trial court judgment. 601 S.W.2d 731. We affirm the judgments of the courts below, and hold that uranium is a part of the mineral estate.

The Mosers, plaintiffs,[1] and the Gefferts, defendants,[2] own neighboring tracts of land in Live Oak County. Prior to 1949, the boundary between the Mosers' land and that of the Gefferts was a winding road. In 1949, the road was straightened and, as a result, no longer represented the true boundary between the two ranches. The new road separated a 6.77 acre tract of the Geffert ranch on the Moser's side of the road and a 6.42 acre tract of the Moser ranch on the Geffert's side of the road. To avoid crossing the highway to reach their tracts, the Mosers' predecessor in title and the Gefferts executed similar deeds conveying the surface estates of the isolated tracts to the other party. The 1949 deeds contain identical language reserving:

[A]ll of the oil, gas, and other minerals of every kind and character, in, on, under and that may be produced from said tract of land, together with all necessary and convenient easements for the purpose of exploring for, mining, drilling, producing and transporting oil, gas or any of said minerals.

Substantial quantities of uranium were discovered on the 6.77 acre tract. The

Mosers, as surface owners of the 6.77 acre tract, sued the Gefferts to establish ownership of the uranium. The Gefferts, as owners of the mineral estate under the 6.77 acre tract, counterclaimed to establish that uranium is one of the "other minerals" reserved from the conveyance of the surface.

At trial, the parties offered conflicting evidence on the depth of the uranium deposits and the effect its removal would have on the surface. Special issues were submitted based on the test set out by this Court in *Reed v. Wylie*, 554 S.W.2d 169 (Tex.1977) (*Reed* I): if substantial quantities of the mineral lie so near the surface that extraction, as of the date of the severance of the surface and mineral estates, would necessarily have destroyed the surface, the surface owner has title to the mineral. The jury found there would have been no substantial surface destruction at the time the deed was executed. The trial court accordingly held the uranium was a part of the mineral estate retained by the Gefferts in the 1949 deed.

After the Mosers' appeal to the court of civil appeals, but prior to final disposition by that court, we rendered our decision in *Reed v. Wylie*, 597 S.W.2d 743 (Tex.1980) (*Reed* II). The court of civil appeals held that *Reed* II should govern the appeal. In *Reed* II, we modified the rule of *Reed* I by holding that a substance "near the surface" is a part of the surface estate if it is shown that any reasonable method of production, at the time of conveyance or thereafter, would consume, deplete, or destroy the surface. 597 S.W.2d at 747. A deposit within 200 feet of the surface was held to be "near the surface" as a matter of law. In addition, we held if a surface owner establishes ownership of a substance at or near the surface, the surface owner owns

1. The plaintiffs are Margaret Lyne Moser, Individually and as Independent Executrix and Testamentary Trustee of the Estate of Catherine Carol Lyne, and her husband William Barnett Moser, Jr., as Independent Executor and Testamentary Trustee of the Estate of Catherine Carol Lyne.

2. The defendants include all persons who own the mineral estate in the 6.77 acre tract, the Gefferts' mineral lessees (United States Steel Corporation and N.M. Uranium, Inc.), and Atlantic Richfield Company, owner of an overriding royalty interest.

the substance beneath the tract at whatever depth it may be found. *Id.* at 748. The *Moser* court of civil appeals found, as a matter of law, that at the time of trial the only reasonable method of mining uranium from the tract was by in-situ leaching or solution mining, a process which it found did not result in substantial destruction of the surface. 601 S.W.2d at 734.[3] Accordingly, the court of civil appeals affirmed.

We have previously attempted to create a rule to effect the intent of the parties to convey valuable minerals to the mineral estate owner, while protecting the surface estate owner from destruction of the surface estate by the mineral owner's extraction of minerals. *See Reed v. Wylie,* 597 S.W.2d 743 (Tex.1980); *Reed v. Wylie,* 554 S.W.2d 169 (Tex.1977); *Acker v. Guinn,* 464 S.W.2d 348 (Tex.1971). In so doing, we decided that determinations of title should be based on whether a reasonable use of the surface by the mineral owner would substantially harm the surface. Application of this rule has required the determination of several fact issues to establish whether the owner of the surface or the mineral estate owns a substance not specifically referred to in a grant, reservation or exception. *See Reed v. Wylie,* 597 S.W.2d 743, 750 (Spears, J., concurring). As a result, it could not be determined from the grant or reservation alone who owned title to an unnamed substance. Determining the ownership of minerals in this manner has resulted in title uncertainty. We now abandon, in the case of uranium, the *Acker* and *Reed* approach to determining ownership of "other minerals" and hold that title to uranium is held by the owner of the mineral estate as a matter of law.

■ In Texas, the mineral estate may be severed from the surface estate by a grant of the minerals in a deed or lease, or by reservation in a conveyance. *See Humphreys-Mexia Co. v. Gammon,* 113 Tex. 247, 254 S.W. 296 (1923). This severance is often accomplished by a grant or reservation of "oil, gas and other minerals." Consequently, Texas courts have had many occasions to construe the scope of the term "other minerals." We have determined that some unnamed substances have been impliedly conveyed or reserved in mineral conveyances by cataloging each, on a substance-by-substance basis, as part of the surface or mineral estate as a matter of law. *See, e.g., Sun Oil Co. v. Whitaker,* 483 S.W.2d 808 (Tex.1972) (fresh water not included in mineral estate reservation of "oil, gas, and other minerals"); *Heinatz v. Allen,* 147 Tex. 512, 217 S.W.2d 994 (1949) (devise of "mineral rights" held not to include limestone and building stone); *Atwood v. Rodman,* 355 S.W.2d 206 (Tex. Civ. App.—El Paso 1962, writ ref'd n.r.e.) ("oil, gas, and other minerals" did not include limestone, caliche, and surface shale); *Union Sulphur Co. v. Texas Gulf Sulphur Co.,* 42 S.W.2d 182 (Tex. Civ. App.—Austin 1931, writ ref'd) (solid sulphur deposits conveyed by ordinary oil and gas lease); *Praeletorian Diamond Oil Ass'n v. Garvey,* 15 S.W.2d 698 (Tex. Civ. App.—Beaumont 1929, writ ref'd) (gravel and sand not intended to be included in lease for "oil and other minerals"); *Reed v. Wylie,* 597 S.W.2d 743 (Tex.1980) (near surface lignite, iron and coal is part of the surface estate as a matter of law).

In making these determinations of ownership, our courts have considered a number of construction aids. We have refused to employ the *ejusdem generis* rule of construction to limit the term "oil, gas and other minerals" to hydrocarbons. *Southland Royalty Co. v. Pan American Petroleum Corp.,* 378 S.W.2d 50 (Tex.1964). Likewise, we have acknowledged that the scientific or technical definition of a disputed substance is not determinative of whether it is a mineral, because the term "other minerals" would then "embrace not only metallic minerals, oil, gas, stone, sand, gravel, and many other substances but

---

**3.** We note that under *Reed* II, however, the correct time frame for determining the existence of a surface destructive method of mineral extraction was not solely at the time of trial (the time used by the court of civil appeals), or solely at the time of conveyance, but the time of conveyance or *thereafter. See Reed v. Wylie,* 597 S.W.2d 743, 747 (Tex.1980).

even the soil itself." *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994, 997 (1949). Such a construction would eliminate any distinction between the surface and the mineral estates. We have, however, approved of considering whether the substance is thought to be a mineral within the ordinary and natural meaning of the term. *See Heinatz v. Allen*, 217 S.W.2d at 997; *Psencik v. Wessels*, 205 S.W.2d 658, 660–61 (Tex.Civ.App.—Austin 1947, writ ref'd). The knowledge of the parties of the value, or even the existence of the substance at the time the conveyance was executed has been found to be irrelevant to its inclusion or exclusion from a grant of minerals. *See Cain v. Neumann*, 316 S.W.2d 915, 922 (Tex.Civ.App.—San Antonio 1958, no writ). *Accord Barden v. Northern Pacific Ry.*, 154 U.S. 288, 314, 14 S.Ct. 1030, 1033, 38 L.Ed. 992 (1893) ("[T]he knowledge or want of knowledge at the time [of the grant] by the grantee in such cases, of the property reserved in no respect affects the transfer to him of the title to it."). In *Acker v. Guinn*, 464 S.W.2d 348 (Tex.1971), we quoted with approval Professor Eugene Kuntz' theory that the proper focus when construing an implied grant of minerals is the general, rather than the specific, intent of the parties. We adopted the view that the general intent of parties executing a mineral deed or lease is presumed to be an intent to sever the mineral and surface estates, convey all valuable substances to the mineral owner regardless of whether their presence or value was known at the time of conveyance, and to preserve the uses incident to each estate. *Id.* at 352; Kuntz, *The Law Relating to Oil and Gas in Wyoming*, 3 Wyo. L.J. 107, 112 (1949).

Professor Kuntz suggested the apparently irreconcilable conflict between the rights of the surface owner to preserve the integrity of his surface fee and the right of a mineral owner who takes a mineral under an implied grant to extract his mineral could be compromised as follows:

> The rights of the surface owner to subjacent support and his right to the use of the top-soil in its place would have to be respected, and at the same time, the owner of the mineral fee should have a right of extraction. Since the right of extraction could only be exercised by destruction of the surface owner's enjoyment, it could only be accomplished with compensation for the damages to the surface estate.... Specific mention of the substance, however, together with the usual provisions for extraction, would demonstrate a specific intention to make the surface right subject to the rights of access for purposes of extraction and would not make the mineral owner accountable for necessary damage flowing therefrom.

Kuntz, *The Law Relating to Oil and Gas in Wyoming*, 3 Wyo. L.J. 107, 115 (1949).

■■■ We now hold a severance of minerals in an oil, gas and other minerals clause includes all substances within the ordinary and natural meaning of that word, whether their presence or value is known at the time of severance. *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994 (1949); *Cain v. Neumann*, 316 S.W.2d 915 (Tex. Civ.App.—San Antonio 1958, no writ). We also hold uranium is a mineral within the ordinary and natural meaning of the word and was retained in the Gefferts' conveyance of the 6.77 acre tract to the Mosers. We continue to adhere, however, to our previous decisions which held certain substances to belong to the surface estate as a matter of law. *See, e.g., Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994 (1949) (building stone and limestone); *Atwood v. Rodman*, 355 S.W.2d 206 (Tex.Civ.App.—El Paso 1962, writ ref'd n.r.e.) (limestone, caliche, and surface shale); *Fleming Foundation v. Texaco*, 337 S.W.2d 846 (Tex.Civ. App.—Amarillo 1960, writ ref'd n.r.e.) (water); *Psencik v. Wessels*, 205 S.W.2d 658 (Tex.Civ.App.—Austin 1947, writ ref'd) (sand and gravel); *Reed v. Wylie*, 597 S.W.2d 743 (Tex.1980) (near surface lignite, iron and coal).

■■■ Having established that the mineral owner has title to uranium, we now must determine the issue of reasonable use of the surface estate by the uranium own-

er. The mineral owner, as owner of the dominant estate, has the right to make any use of the surface which is necessarily and reasonably incident to the removal of the minerals. *See Sun Oil Co. v. Whitaker,* 483 S.W.2d 808 (Tex.1972); *Getty Oil Co. v. Jones,* 470 S.W.2d 618, 627 (Tex.1971); *Humble Oil & Refining Co. v. Williams,* 420 S.W.2d 133 (Tex.1967). This is an imperative rule of mineral law; a mineral owner's estate would be worthless without the right to reach the minerals. A corollary of the mineral owner's right to use the surface to extract his minerals is the rule that the mineral owner is held liable to the surface owner only for negligently inflicted damage to the surface estate. *General Crude Oil v. Aiken Co.,* 162 Tex. 104, 344 S.W.2d 668 (1961); *Stradley v. Magnolia Petroleum Co.,* 155 S.W.2d 649 (Tex.Civ. App.—Amarillo 1941, writ ref'd); 1 H. Williams & C. Meyers, Oil and Gas Law §§ 217, 218.8 (1981).

■ Restricting the mineral owner's liability to negligently inflicted damage to, or excessive use of, the surface estate is justified where a mineral is specifically conveyed. It is reasonable to assume a grantor who expressly conveys a mineral which may or must be removed by destroying a portion of the surface estate anticipates his surface estate will be diminished when the mineral is removed. It is also probable the grantor has calculated the value of the diminution of his surface in the compensation received for the conveyance. This reasoning is not compelling when a grantor conveys a mineral which may destroy the surface in a conveyance of "other minerals."

■ We hold the limitation of the dominant mineral owner's liability to negligent-ly inflicted damages does not control in a case such as this, in a general conveyance of "other minerals." When dealing with the rights of a mineral owner who has taken title by a grant or reservation of an unnamed substance such as this, liability of the mineral owner must include compensation to the surface owner for surface destruction.[4]

■ This holding does not affect the right of the mineral owner to enter the surface estate and use so much of the surface as is reasonably necessary to remove the minerals. *Ball v. Dillard,* 602 S.W.2d 521, 523 (Tex.1980); *Harris v. Currie,* 142 Tex. 93, 176 S.W.2d 302, 305 (Tex. 1943). As in the case of the mineral owner who takes under a specific grant, the mineral owner under a grant of "other minerals" is restricted in his use of the surface estate by the dictates of the "due regard" or "accommodation doctrine." This rule is applied when the surface owner and mineral owner are attempting to use the surface estate for two conflicting and incompatible uses. We held, in *Getty Oil Co. v. Jones,* 470 S.W.2d 618 (Tex.1971), that even though the mineral owner held the dominant estate, he must exercise his rights of surface use with due regard for the rights of the surface owner.

Because of the extent of public reliance on our holdings in *Acker v. Guinn,* 464 S.W.2d 348 (Tex.1971), and *Reed v. Wylie,* 597 S.W.2d 743 (Tex.1980), and because of an inability to foresee a coming change in the law, the rules announced in this case are to be applied only prospectively from the date of our original opinion, June 8, 1983. *See Sanchez v. Schindler,* 651 S.W.2d 249, 254 (Tex.1983).

4. This holding does not affect the statutory duty of the mineral owner, or his lessee, to reclaim the surface after surface mining. *See* Texas Uranium Surface Mining and Reclamation Act, NAT. RES. CODE ANN. §§ 131.001 to –.270. *See also* Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201 et seq. (1977). The Texas Act requires an operator who is surface mining uranium to submit and effect a reclamation plan or lose his performance bond and face civil and criminal penalties. TEX. NAT. RES. CODE. ANN. § 131.101 to –.270. The Code provides the surface owner with an opportunity to have the land classified as unsuitable for surface mining if he believes the land cannot be reclaimed to the Code's strict standards. *Id.* §§ 131.038, –.039, –.047. The Code also demands all reclamation efforts to proceed as contemporaneously as practicable with the surface mining operation. *Id.* § 131.102(b)(14).

We affirm the judgments of the courts below. We hold as a matter of law the Gefferts are the owners of the uranium in the 6.77 acre tract.

RAY, Justice, dissenting.

I respectfully dissent. I agree with the majority that uranium is a mineral within the ordinary and natural meaning of the word. Also, I agree with the majority that a mineral owner who takes title by an instrument containing an unspecific grant of "oil, gas and other minerals" must compensate the surface owner for the surface destruction caused by the mining of the minerals. I disagree with the majority in that its decision to apply the compensation rule prospectively prevents the Mosers from receiving compensation for the destruction of their surface estate. The rationale underlying the majority's determination to apply this decision prospectively is based on the public's reliance on our former holdings and the public's inability to foresee this change in the law. Neither of these reasons, however, applies to the case at bar. Thus, I would hold that the new compensation rule applies in this case, so that the Mosers' are entitled to compensation from the mineral owners for the destruction of their surface estate.