Monnie Lou HOLLAND, Appellant,

v.

A.T. KIPER, et ux., Appellees.

No. 12–83–0116–CV.

Court of Appeals of Texas,
Tyler.

Dec. 31, 1984.

Rehearing Denied March 28, 1985.

Danny Buck Davidson, Bankhead, Davis & Davidson, Carthage, for appellant.

Leroy LaSalle, LaSalle & Underwood, Carthage, for appellees.

COLLEY, Justice.

This appeal involves a dispute concerning the ownership of coal and lignite underlying a 32½-acre tract of land in Panola County. Monnie Lou Holland, plaintiff/appellant, received such tract in a partition deed dated July 23, 1952, and executed by her and the other heirs at law of L.L. Waits. Such partition deed expressly excepted from the division of the land "all of the oil, gas and other minerals in, on and under all of the lands included in this Partition Agreement." Under this deed each heir was vested with an undivided ⅐th interest of such minerals in the five tracts of land partitioned, aggregating approximately 264 acres. On August 5, 1960, Holland signed and delivered a coal and lignite lease to Frank L. Oberthier covering, among other tracts, the 32½-acre tract involved in this appeal. On July 22, 1970, Holland, joined by her husband, sold and conveyed by a general warranty deed the 32½-acre tract to defendants/appellees, Audra Thomas Kiper and wife, Rachel Kiper. Such deed contained the following mineral reservation:

THERE IS EXPRESSLY EXCEPTED AND RESERVED in favor of prior Grantors, all the oil, gas *and other minerals* in and under and that may be produced from the above described lands, together with the right of ingress and egress at all times for the purpose of mining, exploring, developing and producing same. (Emphasis added.)

On February 11, 1983, the trial court rendered judgment based on a jury verdict in favor of the Kipers, awarding the Kipers title to the coal and lignite underlying the 32½-acre tract and ownership of all royalties on such minerals theretofore paid into the registry of the court by Texas Utilities Generating Company. Holland's motion for new trial was overruled, and she ap-

peals from the judgment, presenting seven points of error. We affirm.

Holland, by her pleading, sought reformation of the 1970 deed executed by her as grantor to the Kipers as grantees to show that the coal and lignite underlying said land were expressly reserved to her as grantor, and a declaratory judgment for title to same and all royalties payable under the coal and lignite lease originally executed by Holland in favor of Oberthier. In addition to the facts already discussed, the record shows, by a written stipulation of the parties, that the deposits of coal and lignite underlying the tract in question were found at a depth of less than 200 feet from the surface. Curtis Ray Johnson, an employee of Texas Utilities Generating Company, was produced as a witness at trial by the Kipers. He testified at length about the "strip mining" of the land in question whereby "scrapers" and draglines were used to remove the soil (overburden) above the lignite deposits, thereby exposing the lignite which was removed from the open pits by a power shovel, and placed on "haulers" which transported the lignite to another site for processing. The open pits, according to Johnson's testimony, were 120 feet wide and ranged in length from 1500 feet to approximately one mile.

Following the reception of the evidence and testimony offered by the parties, the trial court submitted three special issues to the jury. The first special issue inquired whether "the plaintiff and defendants had reached an agreement that the coal and lignite would be reserved in favor of Monnie Lou Holland in the deed conveying the 32½ acres to the defendants...." The jury answered that issue "No," and under the court's instructions the remaining two issues were not answered. Holland does not challenge such finding.

By her third point of error, Holland complains of the court's action overruling her objections to Special Issue 1. The record does not reflect that Holland made *any* objections to the court's charge. By failing to object to the submission of Special Issue 1, Holland waived her right to

complain of such issue. TEX.R.CIV.P. 274; *Allen v. American Nat. Ins. Co.,* 380 S.W.2d 604, 609 (Tex.1964). Moreover, we hold that the issue in the form submitted was substantially correct. *Champlin Oil & Refining Co. v. Chastain,* 403 S.W.2d 376, 382 (Tex.1965); TEX.R.CIV.P. 279. Point 3 is overruled.

By her points of error 4, 5 and 7, Holland contends that the trial court erred in refusing to submit her requested Special Issues 1 and 2, and her requested definition of "mutual mistake" accompanying requested Special Issue 2. These issues and definition read:

SPECIAL ISSUE NO. 1:

Do you find from a preponderance of the evidence that the Plaintiff, Mrs. Monnie Lou Holland and the Defendants, Mr. and Mrs. A.T. Kiper intended that the deed in question reserve the Coal and Lignite to Mrs. Monnie Lou Holland.

Answer "Yes" or "No.".

Answer: _____

SPECIAL ISSUE NO. 2:

Do you find from a preponderance of the evidence that the reservation in the deed in question, which failed to reserve the Coal and Lignite to Mrs. Monnie Lou Holland, was the result of a mutual mistake between the Plaintiff, Mrs. Monnie Lou Holland, and the Defendants, Mr. and Mrs. A.T. Kiper.

By the terms 'mutual mistake' is meant that mistake which is common to both parties to a transaction, each of whom is under the same mistake as to its terms.

Answer "Yes" or "No."

Answer: _____

■ Under her fourth point of error, Holland claims that the trial court erred in refusing to submit her requested Special Issue 1 quoted above. As we read the issue submitted, and the requested Special Issue, we note that they are virtually identical. The issue actually submitted asked if the parties "had reached an agreement" that coal and lignite would be reserved in the deed; the requested issue inquired if the parties "intended" that coal and lignite

would be reserved in the deed. Since the issue submitted was substantially correct, the court did not err in refusing to submit the requested issue. *Pickens v. Harrison,* 151 Tex. 562, 252 S.W.2d 575, 580 (1952). Point 4 is overruled.

■ The jury's negative answer to Special Issue No. 1 supports the judgment signed and entered against Holland. She had the burden to secure findings, (1) that the true agreement of the parties was that the coal and lignite was to be reserved to her by the provisions of the deed, and (2) that because of the mutual mistake of the parties, the deed failed to incorporate language specifically reserving such minerals to her. *Sun Oil Co. v. Bennett,* 125 Tex. 540, 84 S.W.2d 447, 451 (Tex.Comm'n App. —1935, opinion adopted). Holland's failure to secure an affirmative answer to Special Issue No. 1 was fatal to her action for reformation of the deed, and renders immaterial any error committed by the trial court in refusing to submit Holland's requested Special Issue No. 2 and her requested definition of "mutual mistake." Holland's points of error 5 and 7 are overruled.

■ By point of error 6, Holland contends that the court erred in overruling her objection to the definition of "mutual mistake" given the jury in connection with Special Issue 2 of the court's charge. Again, we have searched the record and find that no such objection was made by Holland. Nothing is presented for review. *Allen v. American Nat. Ins. Co., supra.* Moreover, since the submitted Special Issue No. 2 was not reached by the jury under the instructions of the court, whether the definition was correct is immaterial. *Texas & N.O.R.R. Co. v. Broadway,* 345 S.W.2d 814, 819 (Tex.Civ.App.-Beaumont1961, no writ). Point 6 is overruled.

Holland argues under her point of error 1 that the reservation contained in her deed to the Kipers reserved coal and lignite as a matter of law, citing the now withdrawn and unpublished opinion of our Supreme

Court in *Moser v. U.S. Steel Corporation,* 26 Tex.Sup.Ct.J. 427 (June 8, 1983).

Ownership of coal and lignite and royalties thereon is to be determined by application of the rules enunciated in *Reed v. Wylie* (Wylie II), 597 S.W.2d 743 (Tex. 1980). See *Moser v. U.S. Steel Corporation,* 676 S.W.2d 99, 102 (Tex.1984).

In *Reed v. Wylie, supra,* the Supreme Court, through Chief Justice Greenhill, stated:

> The rule for near surface lignite, iron or coal, therefore, is that if the deposit lies near the surface, the substance will not be granted or retained as a mineral if it is shown that any reasonable method of production would destroy or deplete the surface. ... *Id.* 747.
>
> ... The test now is whether any reasonable method [for extraction of the substance], including such a method as of *the date of this opinion,* of removal of the lignite, coal or iron will consume, deplete or destroy the surface. ... *Id.* 747. (Emphasis ours.)
>
> ... A deposit which is within 200 feet of the surface is 'near surface' as a matter of law. ... *Id.* 748.
>
> ... [I]f the surface owner satisfies the tests set out above, and establishes ownership of the substance at or near the surface, he ... owns the lignite, iron, or coal beneath such land at whatever depth it may be found. *Id.* 748.

Thus, under *Reed v. Wylie II, supra,* it is clear that where a dispute arises between one claiming title to coal and lignite underlying lands by virtue of a nonspecific grant or reservation of "other minerals" and the surface owner, the surface owner establishes his ownership of such substance at all depths where the substance is found, if during the litigation of such dispute the surface owner discharges his burden of proof, and secures findings that such mineral substances are found within 200 feet of the surface of such lands, or so near the surface thereof, that any reasonable method of extracting the same would consume, deplete or destroy the surface of said lands. While Holland in her argument under her first point relies

solely on the nonexistent June 8, 1983, opinion in *Moser* in contending that she owns the coal and lignite underlying the tract in dispute, she does argue that the reservation of "oil, gas and other minerals" set forth in her deed effectively, and as a matter of law, reserved the coal and lignite to her. Such argument would be valid even under *Reed v. Wylie II, supra,* and *Moser v. U.S. Steel Corp., supra* (676 S.W.2d 99), if the Kipers had failed to discharge their burden of proof under *Reed v. Wylie II, supra.* We conclude that the Kipers did discharge their burden. It was stipulated that the minerals in question were found within 200 feet of the surface. Johnson's uncontradicted testimony establishes as a matter of law the fact that the strip mining operations on the tract in question, which began in 1978, did consume and destroy the surface of such lands. However, no issue was requested or submitted as to whether strip mining of the lignite was a "reasonable method" of extracting the lignite from said lands. Since the mining of the lignite by such method occurred before the suit was filed and substantial quantities of lignite had been mined from the tract, we take judicial notice that "open pit" or "strip mining" is, as a matter of law, a reasonable method for extracting coal and lignite found within 200 feet of the surface of the tract in question. Hence, we conclude that the Kipers are the owners of the coal and lignite underlying the 33½–acre tract in question, and the judgment below was not erroneous in so adjudicating. Point one is overruled.

Finally we turn to Holland's point of error 2 under which she contends that the judgment is void because the trial court had no jurisdiction to render the same. Her argument is, in effect, that necessary and indispensable parties, viz., her six brothers and sisters, who were owners of ⁶/₇ths of the "oil, gas and other minerals" underlying the tract in question, were not joined as parties. Holland filed no plea in abatement, and made no complaint at trial as to the jurisdiction of the trial court, but urges this court to note "fundamental error" in the judgment because of the ab-

sence of her brothers and sisters who she claims are necessary and indispensable parties to the proceeding in the trial court in this cause. We reject such contention. All cases cited by Holland in support of this contention were decided before the 1970 amendment to Rule 39, TEX.R.CIV.P., and are therefore, in this instance, inapposite. Holland's contention that her six brothers and sisters were indispensable parties to this action is without merit. *McCarthy v. George,* 618 S.W.2d 762, 763 (Tex.1981); *Cooper v. Texas Gulf Industries, Inc.,* 513 S.W.2d 200, 202–204 (Tex.1974); *Dulak v. Dulak,* 513 S.W.2d 205, 206–207 (Tex.1974).

Since there was no objection at trial made by Holland complaining of the absence from the proceedings of the six cotenants in the oil, gas and mineral estate in the subject lands, no error is shown. The point of error is overruled.

The judgment of the trial court is affirmed.

### SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

On December 31, 1984, we delivered our original opinion in this cause. Monnie Lou Holland, appellant, filed an original and amended motion for rehearing, and also filed a motion to amend the record by providing a supplemental transcript. We granted Holland's motions to file the supplemental transcript and an amended motion for rehearing based thereon in order to consider the merits of her objections to Special Issue No. 1 and the definition of "mutual mistake" submitted to the jury in this case. The record before us as of the date of our original opinion did not include Holland's objections to the court's charge.

We have now carefully considered the amended motion for rehearing filed on February 28, 1985, as well as the original motion for rehearing. We are persuaded that the motions for rehearing are without merit. *Champlin Oil & Refining Co. v. Chastain,* 403 S.W.2d 376, 382 (Tex.1965); *Sun Oil Co. v. Bennett,* 125 Tex. 540, 84 S.W.2d 447, 451 (Tex.Comm'n App.1935, opinion adopted).

The original and amended motions for rehearing are overruled.